■ JOEL R. HEINEY et al., Appellants, v JAMES PATTILLO et al., Respondents.—In a negligence action to recover damages for personal injuries, etc., plaintiffs appeal from a judgment of the Supreme Court, Kings County, entered April 25, 1979, in favor of the defendants, upon a jury verdict. Judgment reversed, on the law and as a matter of discretion, and new trial granted, with costs to abide the event. On August 8, 1975 plaintiff Joel R. Heiney (plaintiff), and defendants, James Pattillo and Carl Dorfman, were involved in a multiple vehicle accident on the Belt Parkway in Brooklyn. It is not disputed that immediately prior to the accident Pattillo was traveling in the left-hand eastbound lane of the parkway and that plaintiff and Dorfman were traveling westbound. For reasons which are the subject of considerable dispute, Pattillo's vehicle suddenly veered to the left, crossed the median strip of the roadway and entered the westbound lane, where it first struck a taxicab and then plaintiff's vehicle. Almost immediately thereafter, plaintiff's vehicle was involved in a second collision, this time with defendant Dorfman's vehicle. Plaintiff and his wife thereafter commenced the instant action against Pattillo and Dorfman. Essentially, the complaint alleges that Pattillo had negligently caused his vehicle to cross over into the oncoming lanes of traffic, and that Dorfman had negligently failed to maintain a safe distance behind plaintiffs' vehicle, such as would have enabled him to avoid striking it after the collision between plaintiffs' and Pattillo's vehicles. Both defendants interposed cross claims against each other. At the ensuing trial, limited to the issue of liability only, the plaintiff, the two defendants, a nonparty eyewitness to the accident and a police officer who arrived at the scene shortly after the accident were the sole witnesses. Plaintiff testified he was proceeding in the center westbound lane of the Belt Parkway. He had just passed the Flatbush Avenue exit when he noticed "a turbulence" to his left. He then saw an automobile (Pattillo's) "clipping" the back end of a taxi, which was in the left-hand lane about one and one-half car lengths ahead of him in the westbound roadway. About a second later Pattillo's automobile struck plaintiff's automobile on its left-hand side. Plaintiff continued in the center lane and about a second or two later, was struck in the rear by another vehicle (Dorfman's). Plaintiff then lost control of his car, which came to rest off the right side of the road. He did not see or hear any collision in the eastbound lanes immediately prior to this accident. The nonparty witness, Phillip Stein, testified on behalf of the plaintiff that he was traveling in the center eastbound lane of the Belt Parkway. He noticed an automobile (Pattillo's) a short distance ahead of him, weaving from side to side within the confines of the left-hand lane. Shortly thereafter, Pattillo's car veered left across the median in the direction of the westbound roadway. Following the path of Pattillo's car across the divider, Stein observed a taxi in the left-hand westbound lane, and two vehicles in the center westbound lane, two to three car lengths behind the taxi. Pattillo's car passed the taxi (Stein later learned that it struck it), collided with the left side of plaintiff's car and continued moving down the left-hand lane, in an easterly and wrong direction. Plaintiff's car continued in the center lane and was then struck from the rear by Dorfman's car. Plaintiff's car then veered to the right and came to rest off the road on the right-hand side. Dorfman's car remained on the parkway between the center and right-hand lanes. Stein stated unequivocally that at

the time Pattillo's vehicle left the eastbound roadway, there were no other vehicles in its vicinity, and that Pattillo's vehicle had not been in contact with any other vehicle. The plaintiffs then rested. Defendant Pattillo testified he was traveling in the eastbound left-hand lane of the Belt Parkway. He was trying to get over to the right-hand lane in order to exit the parkway at Flatbush Avenue. There was a vehicle in the center lane, so he sped up a little to pass it. As he started to pass, the driver of the vehicle in the center lane sounded his horn. Pattillo leaned over to see if he recognized the driver. At that point, the vehicle in the center lane veered to its left, striking Pattillo's automobile near the front and causing Pattillo to lose control of it. Pattillo remembered another collision, but remembered nothing else. He denied that his car had swayed in any manner prior to the accident. Defendant Dorfman testified he was traveling in the right-hand westbound lane of the Belt Parkway. He remembered passing the Flatbush Avenue exit, but remembered nothing else until after the accident, at which time his automobile was on the right shoulder of the parkway's westbound roadway. This concluded the pertinent testimony with the exception of the introduction, over plaintiffs' objection, of certain records. These will be discussed subsequently. After the summations and charge, the jury returned a verdict in favor of both defendants. For the reasons hereafter stated, plaintiffs are entitled to a new trial against both defendants. On re-cross-examination of Pattillo by counsel for Dorfman, the court, over plaintiffs' objection, admitted into evidence a portion of a motor vehicle accident report (MV 104), which had been completed by Pattillo some three months, 21 days after the date of the accident. The portion of the report admitted was Pattillo's description of the accident: "Was sideswiped, lost control of the car. Was knocked unconscious. Don't know anything about other vehicles that was [sic] in accident." There can be little doubt that had this report been introduced by Pattillo himself, it would have been inadmissible as self-serving (see, e.g., *Newcomb v Frink,* 278 App Div 998; *Schiffer v Korman,* 40 AD2d 681). However, both defendants argue that because the report was introduced by Dorfman, not Pattillo, it was properly admitted in evidence. We agree that the report introduced by Dorfman takes it outside the rule barring the introduction of self-serving accident reports. Nonetheless, the report should have been excluded. The justification offered by Dorfman for introducing this accident report is that he and Pattillo were adversaries because they cross-complained against each other, and he therefore had the right to introduce Pattillo's "admission against interest". We do not dispute that as a general proposition a party is entitled to introduce the admissions of an adverse party. The fact remains, however, that at the time Dorfman offered the accident report, Pattillo had already testified and made the very same "admission" contained therein, to wit: that while traveling eastbound he was sideswiped by another car, causing him to cross the median and enter the westbound roadway. Thus, the report itself was at best cumulative and of little evidentiary value to Dorfman. Conversely, the report served to bolster Pattillo's version of the accident vis-à-vis plaintiff's version, as testified to by witness Stein. Thus, Pattillo obtained the very same unwarranted benefit from Dorfman's introduction of the report as he would have had the report erroneously been admitted upon his own offer. Had the record demonstrated a need by Dorfman to introduce the report, our determination might be different. However, under the circumstances of this case, the potential harm to plaintiffs from the introduction of the report far outweighs the report's value to Dorfman. Consequently, the accident report should have been excluded. On cross-examination of Phillip Stein, the

nonparty eyewitness, there was considerable questioning as to why Stein had not attempted to pass the allegedly weaving Pattillo vehicle prior to the occurrence of the accident. On redirect, plaintiffs' counsel returned to the matter, and the following occurred: "Q. Why didn't—why didn't you pass this car? A. Well, because I'm programmed where—Q. Not—MR. SHAPIRO:[1] I object—he's programmed—his program, Judge. MR. WOOSTER:[2] I object—Q. Were you—THE COURT: *Did you bring the bagels home safe that night? All right, I'll let him—he was programmed for bringing the bagels home. His JAP was waiting for him. You know what a JAP is, don't you?* THE WITNESS: Of course. Someone who lives in Japan. THE COURT: All right. Sundown, quick, let's get down to, here" (emphasis supplied). Suffice it to say that this remark by the court was most unfortunate and inappropriate. While, under other circumstances, we might be inclined to the view that these errors are not cause for reversal, the facts and circumstances of this case demand otherwise. Stein was the only disinterested observer of this accident. Only he and Pattillo were in a position to see what, if anything, happened to Pattillo's vehicle to precipitate its crossing the median. Pattillo's testimony suggested that the accident was unavoidable on his part, that it was caused by the negligence of an unknown party. Stein's testimony strongly suggested that the accident was caused by Pattillo's own negligence. Consequently, the jury's assessment of Stein's credibility vis-à-vis that of Pattillo was crucial to its resolution of this dispute. We cannot say that even the single instance of improperly bolstering Pattillo's testimony, when coupled with the court's derogatory remark, did not affect the jury's assessment of Stein's credibility, and its verdict. In view thereof, a new trial is required. We comment briefly on two other issues raised by plaintiffs. The court did not err in admitting into evidence portions of two police accident reports containing diagrams purporting to represent the position of the parties' vehicles at the conclusion of the accident. We find satisfactory the police officer's testimony that the diagrams were based on his observations at the scene, not on statements made to him by others (see *Lee v De Carr,* 36 AD2d 554). The testimony further establishes that at the time the officer arrived at the scene, some five minutes after the accident, the vehicles were in the same position as they were in immediately after the accident (cf. *Schaffner v Rockmacher,* 38 AD2d 835; *Lee v De Carr, supra).* Accordingly, the diagrams were properly submitted to the jury for its consideration. Finally, we note that the trial testimony supported the court's decision to charge the doctrine of emergency with respect to defendant Dorfman. Gibbons, J. P., Gulotta, Margett and O'Connor, JJ., concur.

---

1. Counsel for defendant Pattillo.
2. Counsel for plaintiffs.